**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**B & M USED CARS, a partnership, Account Number 24403, Including all Inventory and all Real and Personal Property, Defendant-Appellee.**

**No. 87-2200.**

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1988.

Decided Oct. 24, 1988.

See also, 114 F.R.D. 55.

Charles Edward Lyons, Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C. on brief), for plaintiff-appellant.

Harold Johnson Bender, Theo X. Nixon, Charlotte, N.C., for defendant-appellee.

Before HALL, MURNAGHAN and WILKINS, Circuit Judges.

K.K. HALL, Circuit Judge:

The United States of America ("the government") appeals an order of the district court granting attorney's fees to B & M Used Cars ("B & M"), the defendant in a civil action brought by the government seeking forfeiture pursuant to 21 U.S.C. § 881. In concluding that B & M was entitled to fees in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), the district court determined that the government's position in the underlying forfeiture action was not "substantially justified." We disagree and reverse.

I.

On August 22, 1986, the government filed a verified complaint praying for forfeiture of B & M in accordance with 21 U.S.C. § 881 and the Supplemental Rules for Certain Admiralty and Maritime Claims. The complaint alleged that B & M, a partnership then owned by Michael Aaron Little and William Bryan Clark, had been supplied with used cars purchased with funds obtained through trade in controlled substances. As provided in the Supplemental Rules, the government's verified complaint was filed with the clerk of the district court, who then issued a warrant for arrest in rem permitting the seizure of B & M. Cook and Little subsequently filed verified claims as a means of challenging the forfeiture in district court.

At this juncture, the B & M forfeiture proceedings became embroiled in an ongoing controversy in the Western District of North Carolina concerning the constitutionality of government property seizures conducted in accordance with warrants issued by the clerk rather than by a judicial officer. On October 17, 1986, two of the three judges in the Western District issued an order in *In re: The Issuance of Warrants by Clerks Pursuant to Title 18 United States Code § 1955(d) and Title 21 United States Code § 881(b)*, Misc. No. 870–P, which stated that the clerk should no longer issue forfeiture warrants. The government's motions for reconsideration or for a stay of this order were denied on October 28, 1986.[1]

On October 31, 1986, the district court issued a memorandum decision with regard

1. The order in No. 870–P was entered by District Judge James B. McMillan, the presiding judge in

to the instant case and seven other forfeiture actions pending at the time of the October 17 order, 647 F.Supp. 732. In its decision, the court concluded that a forfeiture warrant issued by a clerk was constitutionally deficient. Accordingly, the district court quashed the August 22, 1986, warrant for arrest in rem, dismissed the custodian appointed to oversee B & M, and directed the return of all seized property to Cook and Little. The government filed a notice of appeal challenging the district court's decision on November 6, 1986.

Events in the Western District took an unexpected turn on November 7, 1986, when a new two-judge majority issued an order allowing the government's motion for reconsideration and vacating the order of October 17, 1986.[2] 674 F.Supp. 1182. The effect of the November 7 order was to restore the presumptive constitutionality of warrants issued by the clerk pursuant to the Supplemental Rules. The November 7 order did not, however, alter the order quashing the warrant in the instant case.

Rather than pursuing appellate relief, the government elected to dismiss its appeal[3] and to file an amended complaint accompanied by a new motion for a warrant for arrest in rem. On November 24, 1986, the district court conducted a hearing on the motion, at which time counsel appeared on behalf of the government, B & M, Little, and the previously-appointed custodian. The court subsequently issued a new seizure warrant, concluding that there was probable cause to believe that B & M was subject to forfeiture.

Following the renewed seizure of B & M, the district court scheduled depositions in the forfeiture proceedings for January 12, 1987. It appears, however, that the government decided that the participation of its witnesses without a protective order would compromise the criminal investigation of Cook and Little. Without notifying claimants of its conclusion, the government directed its witnesses not to appear at the scheduled depositions.

In light of the government's sudden recalcitrance, the claimants to B & M appeared before the district court and sought an order that would compel the appearance of the government's witnesses. Rejecting the government's expressions of concern with possible damage to the criminal proceedings, the court ordered that the depositions take place within 48 hours. At this point, the government elected to dismiss its civil action with prejudice rather than comply with the amended discovery order.

On March 31, 1987, the district court conducted a hearing on the motions for attorney's fees previously filed by claimants Cook and Little. On September 24, 1987, the court entered an order in which it concluded that (1) claimants were entitled to an award of fees under the EAJA because the government's position in the forfeiture proceeding had not been substantially justified, and (2) special circumstances, including the need for prompt action, justified an enhancement, thereby increasing the usual EAJA fee from $75.00 an hour to $100 an hour.[4] Accordingly, the court ordered the government to pay attorney's fees in the total amount of $14,-925.00.

This appeal followed.

## II.

On appeal, the government contends that its actions in the B & M proceedings were

the present case, with the concurrence of Chief District Judge Robert D. Potter.

2. Chief Judge Potter joined with then-District Judge David B. Sentelle to vacate the October 17, 1986, order.

3. The government's motion to dismiss the appeal stated that "Upon review of the Court's Order of November 5, 1986, the United States has reached the conclusion that ... it does not represent a final order from which an appeal can be taken."

4. In the interval between the district court hearing on claimants' motion for fees and the entry of the dispositive order on September 24, 1987, Cook and Little were tried on a multi-count indictment charging them with numerous violations of federal drug laws. Although they were subsequently convicted of certain offenses, Count Two of the indictment, which charged that they had purchased B & M with drug proceeds, was voluntarily dismissed by the government at trial.

at all times reasonable in fact and law and, therefore, substantially justified under the EAJA. The government thus argues that no fees should have been granted but that, in any event, no special circumstances justified any award beyond the EAJA's presumptively correct level of $75.00 an hour. We find the government's argument on substantial justification persuasive and dispositive.

The EAJA provides that a court shall award fees to any party that prevails in a non-tort civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The legislative history of the statute leaves little doubt that the question of substantial justification focuses upon the reasonableness of the government's action as a means of balancing "the constitutional obligation of the executive branch to see that the laws are faithfully executed against the public interest in encouraging parties to vindicate their rights." H.R.Rep. No. 1418, 96 Cong.2d Sess. 10 (1980), *reprinted in* 1980 U.S.Code Cong. & Adm.News 4953, 4989. The intent of Congress was "to penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *Pullen v. Bowen,* 820 F.2d 105, 107 (4th Cir.1987).

Whether the government's decision to initiate and to pursue forfeiture proceedings against B & M was reasonable must be examined in light of its burden under the appropriate statute. In order to secure forfeiture of property pursuant to 21 U.S.C. § 881, the government need only establish:

> "probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." (citations omitted) ... Once the government meets the showing of probable cause, the burden of proof shifts to the claimant to establish, by a preponderance of the evidence, that the property was not used in violation of the law or was not intended to be used unlawfully.

*Boas v. Smith,* 786 F.2d 605, 609 (4th Cir. 1986).

The fact that the government failed to achieve forfeiture of B & M raises no presumption that its position was not substantially justified. *C.f. Ashburn v. United States,* 740 F.2d 843, 849 (11th Cir.1984). If the record reveals that the government had any reasonable likelihood of prevailing in the action, then it would have been justified in pursuing a case against B & M. On that standard, we are fully satisfied that the government was acting in a reasonable fashion that precludes an award of fees under EAJA.

■ After quashing the first clerk-issued seizure warrant, the district court conducted an adversarial proceeding and issued a second warrant, which included an express statement that the government had established probable cause to support the seizure. It is difficult to understand how the district court could later find the government's position lacking in substantial justification when it had previously acknowledged that the government had satisfied the initial evidentiary burden of a full-scale forfeiture trial.

In support of its fee award, the district court made certain findings of fact that recounted the procedural history of this litigation. Although the court did not expressly link its findings to the government's allegedly unreasonable conduct, it appears that the court believed that such events as the government's reliance upon clerk-issued warrants, the failure to provide witnesses at the scheduled deposition, the dismissal of the forfeiture action, and the subsequent dismissal of the related criminal charge were relevant to the question of substantial justification. We disagree with that assessment.

■ It is evident that the district court continues to entertain doubts regarding the constitutionality of clerk-issued warrants in forfeiture cases. Although the government has addressed this issue at length in its brief, it is a question that we need not resolve at this time. Clearly, when the government initiated forfeiture proceed-

ings against B & M, no controlling authority proscribed the warrant procedure set forth in the Supplemental Rules.[5] The government's use of a verified complaint and a warrant issued by the clerk was in conformity with existing law and cannot, therefore, imply any lack of substantial justification.

We likewise see no relevance in the government's failure to participate in scheduled depositions.[6] While that action may have been something less than laudable—perhaps even arrogant—it does not indicate that the essential position of the government in the litigation (i.e. that B & M was subject to forfeiture) was unjustified. There is a clear conceptual difference between the goals which justify an action and tactics by which those goals are pursued. The EAJA does not create an entitlement to fees based on isolated acts of alleged official misconduct within the course of otherwise valid litigation.

Similarly, it is of no significance that the government subsequently dismissed both the civil forfeiture as well as a similar allegation contained in the criminal count. After the district court declined to grant a protective order with regard to the deposition of the government's witnesses, the United States Attorney's office concluded that open depositions in the civil case would compromise its ongoing criminal investigation of Cook and Little. The decision to abandon a civil action in order to preserve a more important criminal prosecution sheds no light on the essential validity of the civil case.

Finally, the government's voluntary dismissal of Count Two of the criminal indictment has no probative value in the present inquiry into substantial justification. The apparent inability of the government to prove beyond a reasonable doubt that B & M was funded through the proceeds of drug trafficking says nothing about the reasonableness of a related civil action in which the evidentiary burden would have been notably less stringent.

As we have observed, forfeiture under 21 U.S.C. § 881 requires only unrebutted probable cause to believe that property was obtained in violation of statute. In this instance the district court expressly found that the government had probable cause to seize B & M. Surely the government must be justified in pursuing litigation when it has sufficient evidence to prevail at trial.

III.

For the foregoing reasons, we conclude that the award of attorney's fees to B & M Used Cars must be reversed.

REVERSED.

5. The two-judge opinion that prohibited use of clerk-issued warrants relied upon a Florida district court decision, *United States of America v. Certain Real Property Located at 4880 S.E. Dixie Highway,* 628 F.Supp. 1467 (S.D.Fla.1986). Obviously, *Dixie Highway* was not controlling authority in this Circuit. Moreover, the *Dixie Highway* rationale has now been repudiated in the Western District of North Carolina. See *United States v. 1.678 Acres of Land,* 671 F.Supp. 413 (W.D.N.C.1987).

6. We express no approval of the government's unilateral refusal to provide witnesses at a regularly scheduled deposition without providing notice to the opposing parties. We note, however, that the government did subsequently agree to compensate the attorneys for claimant Cook in the amount of $100 an hour for the time spent in connection with the aborted depositions.