**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**$12,248 U.S. CURRENCY,**
**Defendant–Appellee,**

and

**Jack Johnson, Claimant–Appellee.**

**No. 90–15912.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1991.

Decided Dec. 17, 1991.

As Amended Feb. 27, 1992.

Stephen P. Freccero, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

William G. Panzer, San Francisco, Cal., for claimant-appellee.

Before TANG, FARRIS and D.W. NELSON, Circuit Judges.

## ORDER

It is ordered granting the petition of the United States for modification of opinion. The attached amended opinion and amended dissent are ordered filed.

### Attorney's Fees

It is further ordered that the appellee Jack Johnson's unopposed request for attorney's fees on appeal is granted. See 28 U.S.C. Sec. 2412(d). Fees are awarded in the amount of $7,290.26.

## OPINION

TANG, Circuit Judge:

In this appeal we decide whether the government having established probable cause to forfeit seized currency was "substantially justified" under the Equal Access to Justice Act (EAJA) in its delay of the institution and prosecution of forfeiture proceedings and in investigating whether the currency had an innocent source. We conclude that the district court did not abuse its discretion in finding that the government's position was not "substantially justified." Neither did the district court abuse its discretion in awarding and determining the amount of the fees granted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 1985, pursuant to an informant's tip, Oakland Police obtained a warrant to search Johnson's home where Johnson and Terrie Gibbs resided. The officers conducted the search on September 11, 1985. When the police officers arrived, Johnson was in the living room. The female, Terrie Gibbs, was found running out the back door. During the course of the search, the officers found over five pounds of marijuana, 1.2 grams of cocaine, seven tabs of L.S.D., five scales, marijuana and cocaine packaging paraphernalia, three handguns, four shotguns, a rifle, and the defendant $12,248 in U.S. currency.

The State of California filed a criminal complaint against Johnson and Gibbs on September 13, 1985. Johnson pleaded guilty to possession of cocaine on November 18, 1986. The remaining counts against him were dismissed. Johnson received a suspended sentence on January 26, 1987, and was placed on probation. The charges against Gibbs were also subsequently dismissed. Gibbs returned to her native England and Johnson has not seen her since June or July of 1986.

The currency was turned over to the United States Drug Enforcement Agency on September 12, 1985, the day after the search. In a declaration dated November 15, 1985, Johnson claimed a valid ownership interest in the defendant currency. The United States Attorney's office first opened their file in this matter in January 1986. There was no investigation done other than to conduct one interview of Johnson. At that interview, Johnson informed the government that the funds seized were not related to any drug transactions but were the partial proceeds of a Home Maintenance and Improvement Loan Program (HMILP) loan he had obtained from the City of Oakland in 1977 or 1978 to renovate his home.

Johnson offered explanation for why he still had the bulk of the loan funds at the time of the government raid. He explained that he and contractor, Robert Beckstrom, had submitted a bid proposal in March 1984, to bring the building to code requirements. The bid for the project was $18,750. Johnson was to be the subcontractor for the project and would do all work and furnish all materials described in the bid. Johnson received a $12,500 HMILP loan with no interest rate in April 1984. He also received a $7,500.00 grant from the office of Community Development for the rehabilitation project.

Many of Johnson's friends worked at no charge on the project. Contractor Beckstrom and the cement finisher were the only two people who were paid for their services in the remodeling. Johnson documented with photographs the work done on the premises. He also presented the

court with receipts to evidence the purchase of materials, rental of equipment, the work performed by the cement finisher, and inspection fees paid. Beckstrom was paid approximately $1,300 to $1,500 for his work. The other receipts totaled $5,540.27. Beckstrom presented corroborating testimony as to the work done and the arrangements for doing the rehabilitation work. The work on the property was completed approximately six months before the September 11, 1985 raid.

After taking into account the expenses paid, Johnson had approximately $12,700 to $12,900 left from the loan funds; which approximated the amount of the funds seized. Johnson kept this cash in his home and did not bank it even though he had a checking account and credit card.[1]

The government disbelieved Johnson's story, but conducted no other investigation into his claim. On December 12, 1986, approximately fifteen months after gaining possession of Johnson's money, the government finally instituted forfeiture proceedings.

Approximately two years later, on March 1, 1988, the U.S. Attorney's office filed a motion for partial summary judgment on the issue of probable cause to justify its initial seizure of the currency under 21 U.S.C. § 881. The court granted this motion. With consent of the parties, further proceedings for determination were referred to a magistrate.

On July 21, 1989, almost a year and a half after that, Johnson moved for summary judgment based on the government's unreasonable delay. This motion was denied on August 25, 1989. The magistrate applied the four factor test for determining unreasonable delay which amount to a due process violation, in forfeiture cases, as set forth in *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143, (1983). The magistrate found that Johnson had demonstrated a lengthy delay and a timely

assertion of his rights to the property. Summary judgment was denied, however, because there were issues of fact concerning the reasons for the government's delay and whether Johnson suffered prejudice because of the delay.

Four years after the initial seizure, the case proceeded to trial on September 13, 1989. The court found that the defendant currency in fact had an independent innocent source and had not been used illegally. The court also found that the government had unreasonably delayed in instituting and prosecuting these proceedings and had violated Johnson's due process rights.

The Assistant U.S. Attorney in charge of this case failed to present any reason why it had taken fifteen months to file forfeiture proceedings. He could only speculate that the reason might have been because the office generally preferred to wait until the state criminal charges were resolved before instituting forfeiture proceedings. He was uncertain, however, that this was the factor involved. The government's attorney also noted that the U.S. Attorney's office did not have an asset forfeiture division when this case was filed, and that it was common for cases to be delayed because of the work load. Again, the prosecutor could not say definitely that this was the factor in this case.

Johnson then moved to recover fees, costs, and prejudgment interest as the prevailing party pursuant to 28 U.S.C. Section 2412(d)(1)(A), the Equal Access to Justice Act (EAJA). The fee application submitted by Johnson's attorney, William Panzer, listed the tasks performed and the total hours the tasks took cumulatively. On the first declaration in support of the fee application, Panzer described the various tasks performed, which totalled approximately seventy-five hours. On the supplemental declaration, Panzer described additional tasks performed which took approximately

---

1. Johnson also offered an explanation of the source and ownership of much of the drugs and drug paraphernalia found in his house. He claimed that he had been storing for a friend furniture in which much of the contraband had been found. He stated that he and Gibbs had

found the paraphernalia in the furniture after storing it for several months, and that he had instructed Gibbs to throw the drugs out. He claimed that the police raid had occurred right after he and Gibbs made their discovery.

eighty more hours. The court granted the motion and awarded attorney fees for the estimated 160 hours at the rate of $102.22.[2] The government appeals (1) the decision to award fees and (2) the actual amount awarded.[3].

## STANDARD OF REVIEW

■ We review the district court's determination of lack of substantial justification and the amount of the fee award for an abuse of discretion. *Barry v. Bowen,* 825 F.2d 1324, 1330–31 (9th Cir.1987).

## DISCUSSION

1. *Substantial Justification.*

■ The EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees ... unless the court finds that the position of the United States was substantially justified....

28 U.S.C. § 2412(d)(1)(A). "A position is 'substantially justified' if it is 'justified in substance or in the main,' that is, if it has a 'reasonable basis both in law and fact.' " *United States v. One 1984 Ford Van,* 873 F.2d 1281, 1282 (9th Cir.1989) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). The burden is on the government to prove substantial justification. *Barry v. Bowen* 825 F.2d at 1330. "In evaluating the government's position to determine whether it was substantially justified, we

2. The Court adjusted the hourly rate upward from the $75 statutory cap pursuant to the Consumer Pricing Index for Urban Consumers.

3. The amount of the increase from the cap was not challenged on appeal. Our precedent establishes that this adjustment was proper. *Ramon-Sepulveda v. I.N.S.,* 863 F.2d 1458, 1464 (9th Cir.1988).

4. The government relies on *United States v. One 1985 Chevrolet Corvette,* 914 F.2d 804, 809 (6th Cir.1990) and *United States v. B & M Used Cars,* 860 F.2d 121, 125 (4th Cir.1988) *B & M* is inapposite because the government dismissed its action prior to the trial on the merits. 860 F.2d at 123. In *One 1985 Chevrolet Corvette,* the Sixth Circuit held that the district court abused its discretion in awarding attorney's fees under the

look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Id.*

■ In Johnson's case, the government argues that because it won a grant of partial summary judgment on the issue of probable cause to justify the initial seizure of the currency, it was necessarily substantially justified in pursuing its forfeiture claim as it did. Because probable cause is sufficient to trigger forfeiture, the government argues that it was substantially justified in pursuing this litigation to its completion.[4] We do not take issue with the determination that the government satisfied the statutory requirement of probable cause to pursue forfeiture under 21 U.S.C. § 881. Under the circumstances, we agree that the government could have reasonably believed that the money was drug related.

■ Probable cause for initial seizure, however, does *not* automatically equate with substantial justification for the government's action in conducting a poor investigation of Johnson's claim and for its unreasonable delay in pursuing and processing litigation of the forfeiture claim. Under the circumstances of this case, we agree that the government's position was not substantially justified for the purposes of the EAJA. Specifically, we hold that the government's position was not substantially justified because the government violated the claimant's Fifth Amendment due process rights by depriving him of his property for an unreasonable period of time.[5]

EAJA where the district court determined that the government had established probable cause. 914 F.2d at 809. The court held that the government was substantially justified because the government demonstrated that its initial position was substantially justified and nothing occurred prior to or during the trial to require the government to abandon its position. *Id.* Neither of these cases involved an unreasonable delay in bringing and prosecuting the forfeiture complaint. Therefore, the government's reliance is misplaced.

5. The dissent argues that even if the government violated the defendant's Fifth Amendment due process rights, it was nevertheless substantially justified for the purposes of attorneys' fees under the EAJA. We, however, simply cannot see

The Supreme Court has enunciated a four factor test to determine whether the government has violated due process in the length of time it delays instituting forfeiture proceedings. *United States v. $8,850*, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983). The court must examine the length of the delay, the reason for the delay, the timely assertion of the claim, and prejudice. Here, the district court concluded that the government had violated Johnson's due process rights because (1) it failed to institute forfeiture proceedings for thirteen months with no reason; (2) Johnson had timely asserted his rights;[6] and (3) Johnson had suffered prejudice due to the government's delay. Therefore, the district court concluded that the government's position in this litigation was not substantially justified.

### i. Length of Delay

The delay component of this case has two parts. Overall, the government delayed four years between the time of the forfeiture and the time when the trial ultimately established Johnson's right to the funds. This is unacceptable. United States Attorneys have a duty to bring these cases to a conclusion as expeditiously as possible. Johnson's story was easily verifiable both by Gibbs and Beckstrom. Additionally, Johnson kept meticulous records of his expenditures complete with photographs. Confronted with this verifiable evidence, it was unreasonable for the government to continue to delay this prosecution. This factor is particularly salient here given that the government was unable to state the reason for its initial lengthy delay.

The initial component of the delay is the time between the seizure and the institution of the forfeiture proceedings. In this case, the delay of thirteen months was not *per se* unreasonable. *See United States v. $47,980 in Canadian Currency*, 804 F.2d 1085, at 1088–89 (9th Cir.1986) (delay of fourteen months reasonable in light of other factors). However, when coupled with the lack of explanation, this delay factor tips in Johnson's favor.

### ii. Reason for Delay

The government asserts that it presented a reasonable explanation for the delay. The government argues it only waited until one month after Johnson pleaded guilty to possession of 1.4 grams of cocaine in proceedings brought by the state of California. The prosecutor testified that it was his preference to make a determination whether a forfeiture complaint should be filed after the criminal case was resolved. However, he could not testify that this was the factor that influenced him. Furthermore, the prosecutor could not state any reason why there was such a long delay in the filing of the complaint. At trial, the government only presented possible reasons for its delay. The record establishes that the government conducted no investigation in the time period in which it delayed. It is impermissible for the government simply to hold property belonging to United States' citizens for an extended period of time without reason while neither conducting an investigation nor attempting to verify the claimant's story. The government failed to meet its burden to show a reason for its lengthy delay. Just as the district court refused, we also refuse to "engage in speculation as to what the actual reasons for the delay were ...". The district court's finding of fact that the government failed to provide any reason for its delay is supported by the record and is not clearly erroneous.[7] This factor also tips heavily in Johnson's favor.

---

any coherence in the dissent's position. Moreover, if, as the dissent would have it, a *due process* violation is not enough to trigger a finding that the government was not "substantially justified" under the EAJA, the EAJA would amount to nothing but a hollow statutory shell offering little of substance to prevailing parties.

6. This factor is not contested. Johnson asserted his right to the currency in November of 1985.

7. The government's position becomes more untenable when we examine the district court's order denying Johnson's motion for summary judgment based on the unreasonable delay of the government. In that order, the district court stated that it denied the motion because

### iii. Prejudice

In denying the motion for summary judgment, the district court also found that factual questions existed as to the prejudice prong of the test. At trial, the district court held that the prejudice from the delay arose in two ways. First, the government failed to interview Gibbs. As a result, the government might have dismissed the case if Gibbs had corroborated Johnson's story. Second, Johnson lost a witness that could have corroborated his story and bolstered his credibility at trial. The government argues that Johnson was not prejudiced because he ultimately won his case.

 . The government's argument must. fail for two reasons. First, the mere absence of prejudice does not make the government's position substantially justified. The Supreme Court stated "none of these [four] factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *United States v. $8,850*, 461 U.S. at 565, 103 S.Ct. at 2012. Thus, the possible absence of prejudice is not conclusive. Second, even assuming arguendo that a showing of prejudice is necessary, Gibbs had left the United States by the time the United States filed its complaint and was no longer available as a witness for Johnson. The loss of a trial witness is exactly the type of prejudice to which the Supreme Court spoke in *United States v. $8,850.* *Id.* at 569, 103 S.Ct. at 2014.

 Finally, we believe that "[w]henever the Government seizes a significant

amount of money and withholds it for an unreasonable length of time without bringing charges and without offering evidence to justify its continued withholding and without any indication as to when if ever charges will be filed, the [claimant] suffers irreparable harm." *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15, 18 (7th Cir.1978). The government held this money for fifteen months without filing charges. After it filed charges, the government continued to hold the money for three more years until this case finally went to trial. The district court's conclusion that prejudice existed was not clearly erroneous. This factor also tips in Johnson's favor.

### iv. Conclusion

Johnson claimed an interest in the cash seized on November 15, 1985. The government did not file the forfeiture action until fifteen months later. Additionally, this matter did not come to trial for an additional three years. The government could not present a reason for this substantial delay. Nor could it establish that it conducted any investigation as to the source of the defendant currency.[8] Johnson suffered prejudice as a result of the government's unreasonable delay.

The government had reasonable means to test Johnson's story as to the independent innocent source of the money but chose to do nothing. The government did not conduct an investigation, but only delayed. Reviewing these factors, we conclude that the court correctly found an unreasonable delay sufficient to warrant its finding that the government's position was not substantially justified.

---

questions of fact existed as to what was government's reason for the delay. When faced with this order, the government could do no more than posit possible reasons for its delay. The fact that the government waited an additional month for trial and then to present no reason for its delay further establishes that the government's position was not substantially justified.

**8.** The dissent argues that "the government was not unreasonable in its belief that the fifteen-month delay did not violate Johnson's due process rights." However, our task is to determine whether the district court abused its discretion in assessing whether the government was not substantially justified. *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir.1988). As noted, the record strongly supports the district court's decision. The delay of fifteen months was substantial; the further delay of three years was more substantial; the government could not establish a reason for the delay; Johnson timely asserted his rights; and Johnson suffered prejudice due to the government's delay.

2. *Amount of Fee.*

The government argues that the district court abused its discretion in determining the amount of the fee awarded to Johnson's attorney. The EAJA requires:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed.

28 U.S.C. § 2412(d)(1)(B).

 The district court is limited by the statute to awarding "reasonable" attorney's fees. 28 U.S.C. 2412(d)(2)(A). In determining what a reasonable attorney's fee entails, the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee on the basis of factors enunciated by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), which have not been subsumed in the lodestar. *Id.*

The government contends that the district court erred in determining the number of hours it used in computing the lodestar. However, " '[d]eference is to be given to the district court's determination of a reasonable attorney's fee.' " *Cunningham*,

879 F.2d at 484 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir.1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). We need " 'some indication or explanation of how the district court arrived at the amount of fees awarded' ... [however], we do not require an elaborately reasoned, calculated, or worded order; a brief explanation of how the court arrived at its figures will do." *Id.*

 A review of the record indicates that the district court carefully considered and explained the basis for the lodestar figure. The district court considered the time and labor required for this case. It was intimately familiar with this case in which two separate summary judgment motions were prepared with attendant briefs and hearings and a two-day trial was then held with its attendant trial briefs, pretrial conferences, and discovery. Only after the court examined the entire factual and procedural history of this case did the magistrate state, in the order awarding fees: "[t]he court accepts the reasonable estimate of 160 hours which Panzer spent on the merits of the case." The district court did not abuse its discretion in crediting Panzer's submitted hours.[9]

The analysis of the results obtained in the case is also probative of the reasonableness of the number of hours spent and thus the reasonableness of the fee. *Cunningham*, 879 F.2d at 486. A review of the record reveals that, in determining the reasonableness of the number of hours expended, the district court took into account the favorable results that Panzer obtained.

The court also examined the undesirability of this case as well as the nature of the fee agreement. Those factors are relevant in determining the reasonableness of the fee generated. *Cf. Jordan v. Multnomah County*, 815 F.2d 1258, 1262–63 (9th Cir. 1987) (the fee may be adjusted by the *Kerr* factors other than those subsumed in the lodestar). Here, the district court stated:

---

9. The government argues that any pretrial preparation of this case could not have been extensive because Panzer asked for a week continuance on the date of trial to prepare his client, with whom he had lost touch. However, the presentation of Panzer's case the next day belies this contention.

The court also notes that Johnson's counsel, William Panzer, ... agreed to represent Johnson on a *pro bono* basis.... Without his counsel's voluntary assistance, the court has doubt that Johnson would have been unable to afford private counsel. And without the able assistance of Panzer, Johnson would have lost this money to the government. An award of attorney's fees in this case truly serves the public policy rationale of the EAJA.

The government cites a string of cases which hold that fee applications must be supported by detailed records and which have rejected fee applications based solely on estimates. However, this circuit has held that "[b]asing the attorneys' fee award in part on reconstructed records developed by reference to litigation files and other records is not an abuse of discretion." *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir.1983). *See also Harkless v. Sweeny Ind. School Dist.*, 608 F.2d 594, 597 (5th Cir.1979) ("while it is by far the better practice for attorneys to keep time sheets, such documentation is not always essential" especially where the representation was taken on a *pro bono* basis); *Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) ("[t]he lack of contemporaneous records does not justify an automatic reduction in the hours claimed"). These cases reveal we have a strong preference for contemporaneous time records; however, the absence of these records is not fatal to Panzer's fee claim. Further, the fact that this case was undertaken on a *pro bono* basis indicates that the lack of time records was not based on incompetence or bad faith, but was simply a by-product of the decision not to charge his client. *Cf. Harkless*, 608 F.2d at 597. The absence of contemporaneous time records does not, therefore, demonstrate that the district court abused its discretion.

## CONCLUSION

The district court did not abuse its discretion in determining that the United States'
position was not substantially justified because the government unreasonably delayed its prosecution of this case. The district court also did not abuse its discretion in determining the amount of the fee to be awarded Johnson's attorney.

AFFIRMED.

FARRIS, Circuit Judge, dissenting:

The majority's opinion focuses on what it calls the government's "poor investigation" and "unreasonable delay." Because I believe the government adequately demonstrated a reasonable justification for its actions, I respectfully dissent.

The Equal Access to Justice Act seeks to punish unreasonable government behavior without impairing the government's ability to effectively and efficiently enforce the nation's laws. *United States v. B & M Used Cars*, 860 F.2d 121, 124 (4th Cir.1988). The government must pass the four part test established by the Supreme Court: 1) length of delay; 2) reason for delay; 3) defendant's assertion of right; and 4) prejudice to the defendant. *United States v. $8,850*, 461 U.S. 555, 564–65, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983). The majority believes that the government violated all four parts of this test. We must "look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987). Appropriate review of the government's actions indicate (in my opinion) that the district court and the magistrate abused their discretion.

It is undisputed that the government was substantially justified in initiating forfeiture proceedings against the $12,248.00 of currency seized from Johnson's house. Although the magistrate later found in favor of the claimant, that fact alone does not warrant the award of attorney's fees. "[A] position can be justified even though it is not correct, and we believe it can be substantially justified if a reasonable person could think it correct." *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988). This

standard is no different than the "reasonable basis in law and fact" standard long adopted by the Ninth Circuit. *Id.* at 565, 108 S.Ct. at 2550. The government had a reasonable basis to believe that the currency was related to narcotics and that forfeiture was appropriate under 21 U.S.C. § 881(a)(6). Punishing the government for making, at worst, a reasonable mistake, is not the purpose of the EAJA.

The majority observed that the government's 15–month delay before instituting forfeiture proceedings was a significant factor in awarding attorney's fees. The government's position was justifiable under the EAJA. The government, quite reasonably, did not institute forfeiture proceedings against the defendant until it completed its criminal case. The defendant pleaded guilty to cocaine possession on November 18, 1986. The government initiated formal proceedings less than one month later. The delay that occurred following the completion of the criminal proceedings was minimal, and less than the two month delay held reasonable in *$8,850*. *Id.* 461 U.S. at 565–69, 103 S.Ct. at 2012–14.

Further, the government could reasonably believe that the 15–month delay did not violate Johnson's due process rights. In *$8,850,* the Supreme Court upheld a forfeiture with an 18–month delay between the time of seizure and forfeiture proceedings. *Id.* at 569–70, 103 S.Ct. at 2014–15. The delay fails to support the attorney fee award.

The majority finds it significant that the government failed to detail with preciseness the *exact* reason for the delay. The Assistant United States Attorney was asked three years after the initiation of the proceedings why the government waited fifteen months to institute the forfeiture proceedings. The prosecutor gave what he assumed was the reason. I am not suggesting that the government be allowed in all cases to plead ignorance when asked about delays. However, in these particular circumstances, references to practices of the office was sufficient if the reason was sound. It was.

The prosecutor indicated that the filing may have been delayed until resolution of the underlying criminal case against Johnson. He stated that he preferred to make the determination whether a forfeiture complaint should be filed after the underlying criminal proceedings had been resolved. A pending criminal action justifies significant delays in the civil forfeiture proceedings. *Id.* at 567, 103 S.Ct. at 2013; *see also United States v. $47,980 in Canadian Currency,* 804 F.2d 1085, 1088–89 (9th Cir. 1986), *cert. denied, BSP Invest. & Dev., Ltd. v. United States,* 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 878 (1987) (observing that a criminal conviction may result in forfeiture, rendering civil proceedings unnecessary).

Although the majority correctly notes that the loss of a potential witness is potentially prejudicial, Johnson was able to prove that the money had an innocent source. The court ruled in his favor.

The majority's emphasis on the length of time the money was held is misplaced. We noted in *Ivers v. United States,* 581 F.2d 1362, 1373 (9th Cir.1978), that mere possession of currency by the government is not prejudicial because any lost value can be restored by the addition of interest during the time the government withheld the currency. The majority's argument that delay *must* lead to a finding of prejudice is inconsistent with our prior decisions which can only be overturned by an en banc proceeding.

The 15–month delay was not unreasonable under these circumstances. I would hold that the government established probable cause for initiating the forfeiture and its position was substantially justified. *See United States v. One 1985 Chevrolet Corvette,* 914 F.2d 804, 809 (6th Cir.1990).

The award of attorney's fees should be reversed.