8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
HARDRIVES, INC.; Raymond Hite; Kenneth Locke, Defendants-Appellees.
 No. 92-15224.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1993.
Decided Sept. 30, 1993.
 
 Before: GOODWIN, HUG and FLETCHER, Circuit Judges
 MEMORANDUM*
 The United States appeals the district court's award of attorneys' fees to government contractor Hardrives, Inc. under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The court awarded attorneys' fees following its dismissal of the government's fraud action against Hardrives alleging the submission of false claims for equitable adjustments to the construction contract in violation of the Contract Disputes Act, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. § 3729. The government argues that the district court abused its discretion by finding the United States not substantially justified in bringing suit. It suggests that a legal error infected the court's fees determination. Hardrives counters that the government misreads the district court's decision and that the court's credibility findings suffice to uphold its attorneys' fees ruling.
 The district court had jurisdiction under 41 U.S.C. § 604 (Contract Disputes Act) and 31 U.S.C. § 3729 (False Claims Act). Our jurisdiction rests on 28 U.S.C. § 1291 (Final Judgments). A district court's award of attorneys' fees is reviewed for an abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 562 (1988); Bullfrog Films Inc. v. Wick, 959 F.2d 782, 784 (9th Cir.1992); Kali v. Bowen, 854 F.2d 329, 331 (9th Cir.1988). "The court's interpretation of the EAJA, however, is subject to de novo review." United States v. 50.50 Acres of Land, 931 F.2d 1349, 1356 (9th Cir.1991) (citation omitted). A court abuses its discretion when its " 'decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision.' " Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir.1990) (citing Petition of Hill, 775 F.2d 1037, 1040 (9th Cir.1985)); see also Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 496 (9th Cir.1987). Even under this "highly deferential standard," Kali, 854 F.2d at 334, we conclude that the district court misunderstood the proper inquiry for awarding attorneys's fees and imposed an incorrect legal standard on the government. We, therefore, reverse.
 I.
 This case arises from several claims for equitable adjustment submitted by contractor Hardrives in connection with a fixed-price contract[1] entered into in 1986 with the United States Bureau of Reclamation ("BOR") for construction of the Hohokam canal, a part of the Central Arizona Project which conveys water from the Salt Gila Aquaduct to the Hohokam Irrigation and Drainage District. (ER at 45). A private engineering firm, Franzoy-Corey, was appointed by the BOR to draft the contract specifications and to oversee and administer the construction. A general contractor under a fixed-price contract may apply to a government contracting officer for equitable adjustments to the bid price based on changes made to the contract specifications. Claims determinations by the contracting officer are subject to appeal to the Interior Board of Contract Appeals ("IBCA" or "Board"). 41 U.S.C. §§ 605, 607(d). Hardrives contends that Franzoy-Corey altered several contract specifications, most significantly those related to sealant and earthworks. It submitted claims for additional expenses incurred as a result of these changes.[2] After the contracting officer failed to issue a decision on the largest claim and made no determination on smaller claims admitted to be partly meritorious, Hardrives filed a number of appeals with the Board in 1987-88. In August 1990, the government moved to stay the appeals before the Board on the ground that the Justice Department intended to file a civil fraud action against Hardrives involving the equitable adjustment claims.
 
 
 1
 In October 1990, the government filed its complaint alleging that each of the claims was grossly excessive in relation to the costs which Hardrives had actually incurred, as shown by Hardrives' accounting records, and in relation to the amounts which Hardrives reasonably could estimate it would incur. As revised and amended, the claims totalled approximately $4.8 million, $4.2 million of which the government alleged was associated with false certifications and misrepresentations in violation of the Contract Dispute Act, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. § 3729(a). The complaint was based in part on the results of an audit conducted by the Department of Interior, Office of Inspector General ("OIG") at the request of the contracting officer responsible for evaluating Hardrives' claims.[3] Several witnesses, including former Hardrives employee, Robert Dangers, subcontractor MRT, Inc's president, Billy Tripp, and retired Hardrives estimator, William Rodgers, also appeared to confirm that Hardrives knowingly had submitted fraudulent claims. Dangers initiated contact with the Department of Interior outlining in a six-page letter several grounds for his belief that Hardrives had engaged in fraud. In interviewing these witnesses, the government found their accounts consistent and corroborative.
 
 
 2
 On an expedited trial schedule, Hardrives brought several summary judgment motions challenging the district court's jurisdiction, the legal theories for the government's case, and the conflicting accounting methodologies employed to calculate overhead. The court denied seven of these motions. Its April 1991 memorandum and order explicitly rejected arguments urging that primary jurisdiction rested with the IBCA or that IBCA remedies should be exhausted prior to initiation of suit. It noted that the IBCA had granted the government's motion to stay pending appeals because it lacked jurisdiction over the government's fraud claims against Hardrives.[4]
 
 
 3
 The bench trial began at the end of April 1991. Over thirteen days, the government presented two lines of proof. Pointing to the difference, by orders of magnitude, in the auditor's assessment of supportable claims and Hardrives' submissions, it sought to prove fraud indirectly.[5] It also put on direct testimonial evidence that Hardrives had knowingly prepared false claims. At the close of the government's case, Hardrives moved for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). The district court granted the motion in an oral ruling on the merits. The court found that the government had not proved its case on direct evidence because the witnesses it relied upon lacked credibility. With respect to one witness, the judge noted "I have never been so convinced in my life as I am that Mr. Dangers made only three honest statements ... after those three statements I do not place any credibility in anything else the man said or wrote."[6] Nonetheless he acknowledged that Dangers "was sufficiently familiar with the job, the project, the bid process, and so forth, to make a very convincing letter which, unfortunately, I think the Bureau, the Justice Department, and the auditors all believed." In addition to Dangers, the judge disbelieved the Franzoy-Corey witnesses (whom he viewed as entangled in a conflict of interest) and questioned the impartiality of the government auditors. "[I]t is difficult for me to believe," he noted, "that the auditors approached the job with an open mind. I think they went into the audit resolved to find overstatements by Hardrives and looked at all the evidence with that in mind." (ER at 249).
 
 
 4
 Regarding the government's indirect evidence of fraud, the court declared it could make no findings on the record as developed. Believing the audit unreliable, it suggested that the government should have gone to the IBCA for a determination of a reasonable claim amount against which the court could measure the claims originally submitted. In its view, the court had "no authority ... to determine ... the correct amount of the claim. Those decisions are strictly up to the [IBCA]." (ER at 252). Without "the benefit of the determination that it does not have the jurisdiction to make," the court could not consider the government's indirect line of proof. (ER at 250-51).
 
 
 5
 Following dismissal of the case, the government filed a notice of appeal, which it later withdrew with prejudice. (CR 241, 250). Hardrives sought attorneys' fees and expenses in the amount of $550,000 under the EAJA, 28 U.S.C. § 2412(d)(1)(A). Finding the government's litigation position was not "substantially justified" and that no "special circumstances" applied,[7] the court awarded Hardrives $350,000 in fees.
 
 II.
 
 6
 The EAJA provides for the award of attorneys' fees and litigation expenses incurred by a prevailing party unless the court finds that the United States was "substantially justified" in the litigation.[8] The government bears the burden of showing that its position was substantially justified. Bay Area Peace Navy, 914 F.2d at 1230. The legislative history of the EAJA indicates that
 
 
 7
 [t]he test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made.
 
 
 8
 ...
 
 
 9
 The standard, however, should not be read to raise a presumption that the Government position was not substantially justified simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.
 
 
 10
 H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10-11 (1980), reprinted in 1980 U.S.C.C.A.N. 4953, 4989-90. The Supreme Court has interpreted "substantially justified" to mean "justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit." Underwood, 487 U.S. at 565.[9] "That the government lost does not raise a presumption that its position was not substantially justified." Kunzman, 817 F.2d at 498; United States v. First Nat'l Bank of Circle, 732 F.2d 1444, 1447 (9th Cir.1984). A loss on the merits is not dispositive of the government's liability for attorneys' fees because "[c]onceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." Underwood, 487 U.S. at 569; Abela v. Gustafson, 888 F.2d 1258, 1264 (9th Cir.1989). Not only must the government "have been wrong, ... [it must have been] so wrong as to be unreasonable." Frey v. Commodity Futures Trading Comm'n, 931 F.2d 1171, 1178 (7th Cir.1991).
 
 
 11
 In making a determination of substantial justification a district court must "evaluate the basic arguments the Government put forth." Abela, 888 F.2d at 1264 (emphasis in original). It must look to the totality of the circumstances, Bullfrog Films, 959 F.2d at 784, including "extraneous circumstances bearing upon the reasonableness of the government's decision to take a case to trial." Kali, 854 F.2d at 332. The "existence of precedents construing similar statutes or similar facts" has been viewed as "[p]erhaps the most important of these extraneous circumstances." Id.
 
 
 12
 In some cases, we have acknowledged that preliminary determinations by the district court may suggest substantial justification for the government's litigation position. United States v. $12,248 United States Currency, 957 F.2d 1513, 1517 & n. 4 (9th Cir.1991) (grant of partial summary judgment one consideration in evaluating circumstances justifying initial seizure of currency); accord Kali, 854 F.2d at 333 (loss on summary judgment does not demonstrate lack of substantial justification). We also have looked at the steps the government has taken to evaluate its case. Where it has had "reasonable means to test" conflicting accounts and "chose[n] to do nothing" and where it has failed to "conduct an investigation" and "only delayed," we have been inclined to uphold the district court's grant of fees. $12,248 United States Currency, 957 F.2d at 1519; see also United States v. Estridge, 797 F.2d 1454, 1457-58 (8th Cir.1986) (lack of diligent investigation primary reason for awarding fees).
 
 
 13
 We may not uphold the district court if the record demonstrates that it "misunderstood its task" in deciding to award fees. A reprise of the reasoning relevant to the "merits [of a case] does not constitute a demonstration of the reasonableness [or unreasonableness] of the government's position." Oregon Natural Resources Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir.1992).
 
 
 14
 The district court's attorneys' fees order fails to articulate or apply the test used to evaluate whether the government is substantially justified in bringing suit. Instead of considering whether the government's litigation position had a reasonable basis in law and fact, the court simply incorporated by reference its findings on the merits: "Therefore, based upon all the considerations cited by this Court at the conclusion of [the government's] case-in-chief, this Court finds that the position of the United States was not substantially justified." District Court opinion at 3. In our view, the court clearly "misunderstood its task." Oregon Natural Resources Council, 980 F.2d at 1332. To award attorneys' fees, a district court must engage in a discrete analysis of the reasonableness of the government's arguments, evaluating their basis in law and fact for the purposes of a determination of liability for attorneys' fees (rather than strictly for a decision on the merits). We conclude the court abused its discretion in importing into its fees determination the standard applicable to the merits. We, therefore, reverse and vacate the award of attorneys' fees.
 
 II.
 
 15
 The parties disagree in their characterizations of the district court's ruling on the merits and its order awarding fees. The government asserts that the only consideration noted by the court in its attorneys' fee decision was jurisdictional in nature, and that, as a statement of jurisdiction, it is legally erroneous and, in itself, a ground for finding an abuse of discretion. It takes the position that as a result of this jurisdictional error the district court failed to consider one of the two legal bases relied upon in bringing suit. Accordingly, the court was unable fully to evaluate whether a reasonable basis in law existed for its case against Hardrives. Hardrives contends that the court accepted both legal theories advanced by the government and ruled against it on the facts, either because it found its witnesses incredible or because the record was insufficiently developed. It suggests that the factual predicate for bringing the fraud action was so inadequate that the government could not be considered substantially justified in pursuing the litigation.
 
 A. Basis in Law
 
 16
 The government relied on two simple methods to prove its allegations of fraud. It first sought to prove that Hardrives knowingly submitted false and inflated claims. Such direct proof obviously would establish actionable fraud. Second, it asserted that the gross discrepancy between claimed costs submitted for adjustment and actual costs of work performed (which it sought to prove through the audit and other evidence) would give rise to an inference of fraud. At the time the government presented the argument, Eleventh Circuit precedent held that such indirect proof of fraud was adequate. United States v. White, 765 F.2d 1469, 1481-82 (11th Cir.1985).
 
 
 17
 In its only explanation for awarding attorneys' fees the court noted:
 
 
 18
 [T]his Court has already stated that the action should not have been brought in this Court without the government first having completed the administrative process. This Court has also stated at the conclusion of the [government's] case, that it was a waist [sic] of taxpayer dollars to have initiated this action in this forum without first having obtained a final decision in the administrative process.
 
 
 19
 District Court opinion at 3. It is not clear whether the district court believed that it lacked jurisdiction to make factual determinations as to the extent Hardrives overstated its claims because IBCA possessed such jurisdiction or whether it believed that the government could not establish fraud in its district court case without those findings first having been made by the IBCA. Either way the district court erred. If it believed itself without jurisdiction, the district court simply was wrong: it had jurisdiction to make all the findings of fact necessary to a legal determination as to fraud. If it believed the government's case unravelled without the benefit of IBCA findings, the district court failed in its duty to make findings and decide the existence of and extent of any overstated claims. Presumably both contract and fraud claims require a thorough examination of a project's accounting and actual costs. That the factual predicate for either claim is similar does not alter the court's duty to adjudicate the fraud claims and make the necessary factual findings. See United States v. General Dynamics Corp., 828 F.2d 1356, 1358, 1362-64 (9th Cir.1987) (despite Armed Service Board of Contract Appeals' expertise in interpreting military contract, deferral to the Board on criminal fraud prosecution "was an impermissible delegation of an article III judge's decision-making function and an unwarranted interference with prosecutorial discretion").[10] Although in deciding the case, the district court had the obligation to determine the validity of the claims, the extent of any overstatements, and whether they were the result of fraud, the government need not prove fraud to avoid liability for attorneys' fees. It need only demonstrate that its litigation position had a reasonable basis in fact and law. We conclude the government rooted its case in sound legal theories.[11] It clearly met the first prong of the test for substantial justification.
 
 B. Basis in Fact
 
 20
 Hardrives reads the district court's incorporation by reference of its determinations on the merits to conclude that the holding of liability for fees flowed from its adverse credibility determinations. This may be so. Nevertheless, " 'an adverse finding on a credibility issue does not, in and of itself, deprive the [government's] position of a basis in fact.' " Mester Mfg. Co. v. INS, 900 F.2d 201, 204 (9th Cir.1990) (citing Temp Tech Industries, Inc. v. NLRB, 756 F.2d 586, 590 (7th Cir.1985)).
 
 
 21
 The district court itself acknowledged that one of the government's witnesses "was sufficiently familiar with the job, the project, the bid process, and so forth, to make a very convincing letter ..." District Court oral ruling at 2. The government corroborated this witness' account in interviews with others close to the project, including the president of a subcontractor and a retired Hardrives estimator. Nor is this a case in which the government could be faulted for failing to conduct an investigation.[12] In the face of extraordinarily high claims,[13] it undertook an extensive audit, which, on its face, appeared to reveal highly inflated estimates and considerable accounting discrepancies. The auditors discovered, for example, that Hardrives assigned field overhead to the Hohokam project at thirteen times the rate to other projects. It presented duplicate claims without any suggestion that they should be considered in the alternative.[14] In short, when the government began to investigate the approximately $5 million supplementary claims to a $7 million contract, it was alerted by a number of red flags.[15]
 
 
 22
 The district court discounted the substantial evidence adduced by the government that the indicia of fraud were far more than mere suspicion. In its opinion on the merits it emphasized the circumstances bearing poorly on Dangers' credibility. It found the relationship between the government and the contract's overseer, Franzoy-Corey, fraught with conflicts of interest. Finally it expressed a lack of confidence in the auditors.[16] It did not scrutinize the content of the audit[17] or make independent findings regarding the claims themselves.[18] The fact that the district court judge, rightly or wrongly, ultimately disbelieved the government's witnesses because he thought they were biased is not a basis for holding that the government was not justified in undertaking the litigation.[19] At the outset, the government's case against Hardrives appeared very strong. In our view it was entitled to conclude that its fraud action had a basis in fact. It was substantially justified in commencing and pursuing the litigation.
 
 III.
 
 23
 We conclude the district court abused its discretion in failing to apply the proper standard to its determination that attorneys' fees were warranted in this case. Having satisfied ourselves that the government's litigation position had a reasonable basis in law and fact, we reverse the district court's decision to grant Hardrives fees.
 
 REVERSED.[20]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Hardrives, Inc., 91-2 B.C.A. p 23,769 at 119,056-57 (1991), setting forth the details of the contract
 
 
 [2]
 Hardrives won the Hohokam canal contract on a low bid of $6.7 million. (CR 208 at 15). The audit reports that the government paid $6.8 million on the contract. (ER at 46; CR 208 at 16). The government litigated only the additional $4.8 million Hardrives sought in claims for equitable adjustment. It appears that Hardrives' profit on the project depends on a favorable determination regarding the equitable adjustments. According to the audit, the total cost of the project to Hardrives (including incurred expenses, bonding, overhead) was almost $9 million. (ER at 48). Without the equitable adjustments it stands to lose $2 million; with them it would realize a 30% profit rate. Id. The fixed-price contract originally entered into anticipated a profit rate of 8%. Id. The government points out that the anti-fraud provisions of the Contract Disputes Act were intended by Congress to discourage contractors from submitting undocumented claims in order "to make up losses or increase profits whether the claim was justified or not." (Government's Pretrial Brief, CR 208 at 3 (citing S.Rep. No. 1118, 95th Cong., 2d Sess. 7 (1978) reprinted in 1978 U.S.C.C.A.N. 5235, 5241))
 
 
 [3]
 The contract recognizes the contracting officer's authority to request an audit for claims
 
 
 [4]
 The IBCA decision provides an extensive analysis of the Board's retained jurisdiction (over Hardrives equitable adjustment claims) and the factors favoring a stay (including adequate demonstration by the government that "a real possibility of fraud exists.") Hardrives, Inc., 91-2 C.B.A. at 119,064
 
 
 [5]
 See Government's Opposition to Defendant's Motion for Award of Attorneys' Fees, CR 257 at 16 ("intent could be established by the magnitude of the difference between the amount of the claim and the actual costs")
 
 
 [6]
 Dangers left his employment with Hardrives under circumstances that would bear upon his credibility. He assaulted an officer of the company and vowed revenge
 
 
 [7]
 The government does not press any argument regarding "special circumstances" on appeal
 
 
 [8]
 Under Section 2412(d)(1)(A), a district court
 shall award to a prevailing party other than the United States fees and expenses ... in any civil action (other than cases sounding in tort) ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or special circumstances make an award unjust.
 28 U.S.C. § 2412(d)(1)(A). Before the district court, the government urged that special circumstances counseled against an award and that its position was substantially justified. (CR 257 at 29-34). On appeal it argues only that its position was substantially justified.
 
 
 [9]
 The Ninth Circuit test is drawn from the legislative history, supra. See e.g., Minor v. United States, 797 F.2d 738, 739 (9th Cir.1986)
 
 
 [10]
 The doctrines of exhaustion and primary jurisdiction do not apply unless "Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in judicial proceedings." Id. at 1362; Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579-80 (1989) ("[w]here a statutory requirement of exhaustion is not explicit, 'courts are guided by congressional intent.' ") (citation omitted). The IBCA has no jurisdiction over fraud claims and so cannot have the "first word" on the existence of fraud. See Martin J. Simko Constr. Inc. v. United States, 852 F.2d 540, 545 (Fed.Cir.1988); Hardrives, Inc., 91-2 C.B.A. p 23,769 at 119,060 (1991). As in General Dynamics, the Board acknowledged that whatever findings it made would necessarily implicate the government's fraud claims. Compare Hardrives, Inc. 91-2 C.B.A. at 119,064 ("there is no identifiable segment of the [equitable adjustment] appeals that is unencumbered by an allegation of fraud") with General Dynamics, 828 F.2d at 1358 ("the Board found its jurisdiction precluded ... because the fraud allegations, over which the [district] court had exclusive jurisdiction, were inseparable from the issues General Dynamics was attempting to submit to the Board")
 
 
 [11]
 The district court denied Hardrives' motions for partial summary judgment in part because it found the legal theories sound. Cf. White, 765 F.2d at 1471 (rejecting defendant's position that no fraud could be proven indirectly as a matter of law)
 
 
 [12]
 In Underwood, 487 U.S. at 560, the Supreme Court observed "[b]y reason of settlement conferences and other pretrial activities, the district court may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon, or whether critical facts could easily have been verified by the Government."
 
 
 [13]
 Contracting officer, Harding, testified that he requested an audit because the amounts claimed were "extremely too high." Tr. Jan. 29, 1991 at 103 (CR 108, Exhibit A)
 
 
 [14]
 In its earthworks claim, Hardrives charged the same work and overhead as it showed charged by subcontractor MRT. (CR 257 at 11). It explains the overlapping charges as claims presented in the alternative
 
 
 [15]
 The government also had corroborating evidence (from Dangers and Tripp) that Hardrives encouraged MRT to increase its original earthworks claim ten-fold, from $150,000 to $1.5 million. The district court ultimately found that Hardrives helped process the claim in good faith. It decided that the evidence did not support any inference of fraud. From the government's viewpoint, however, such a discrepancy, corroborated by individuals intimately involved with the claim, justifiably raised yet another red flag
 
 
 [16]
 The court does not explain in detail the basis for its determination that the auditors' objective was other than what the audit declared it to to be--"to determine if claimed costs were reasonable, allowable, allocable, and supported by accurate accounting records." Office of Inspector General Memorandum Audit Report, dated December 1989, at 2. We note that while the audit revealed numerous overstatements, it also identified instances in which Hardrives' accounting system resulted in an understatement of its claims. See e.g., Audit, Appendix 1 (Earthworks Claim, pp 9, 13)
 
 
 [17]
 It may be that the court discounted the audit because it found the auditors unreliable. However, it focussed on witness testimony and the notes from a meeting between the auditors and the contracting officer, not the underlying claims and audit report. For the purposes of ascertaining whether the government's case had any basis in fact, a discrepancy of $4.2 million is not explained away by such scant findings
 
 
 [18]
 The court was not disabled, on account of the IBCA's exclusive jurisdiction over Hardrives' contract claims, from making the factual findings necessary to a fraud determination. See supra at 12-13. The government addressed the court's concern on this subject early in the litigation. In its response to Hardrives' motion for reconsideration regarding the court's jurisdictional determination, the government noted the "Court's inquiry at the pretrial conference concerning whether or not the Court has to determine the meritorious quantum of Hardrives' claims" and explained: "the Court does not in fact need to determine the quantum or the entitlement issues of Hardrives' contract claims. The Court only needs to determine the extent to which misrepresentation of fact or fraud gives rise to Hardrives' inability to support its claims." (CR 203 at 7-8) (emphasis added)
 
 
 [19]
 In urging the district court to award attorneys' fees, Hardrives argued that the government's burden of proof was higher because it had not established a factual record before the IBCA: "A lengthy and expensive action in this Court should only have been brought without an IBCA decision if the Government had clear, overwhelming evidence of Hardrives' guilt." (CR 306, Exhibit 1 at 25-26.) We disagree. The government's case was properly before the district court and its burden of proof was no higher than it would have been had an IBCA determination on the claims been made first
 
 
 [20]
 Not having prevailed on appeal, Hardrives is ineligible for fees. See INS v. Jean, 496 U.S. 154 (1990); Love v. Reilly, 924 F.2d 1492, 1497 (9th Cir.1991)