92 F.3d 871
 45 Fed. R. Evid. Serv. 393, 96 Cal. Daily Op.
Serv. 5889,
96 Daily Journal D.A.R. 9686
Bonnie Lee MENDENHALL, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation
Administration, Respondents.
 No. 94-70320.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 15, 1996.
Decided Aug. 8, 1996.
 
 Joseph D. Kuchta, Kuchta & Brinker, Washington, D.C., for petitioner.
 Wilton J. Smith, Federal Aviation Administration, Washington, D.C., for respondents.
 Petition to Review a Decision of the National Transportation Safety Board.
 Before REINHARDT, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether the Federal Aviation Administration was substantially justified in filing a complaint before the National Transportation Safety Board against a commercial pilot who had successfully passed a reexamination.
 
 
 2
 * Bonnie Lee Mendenhall is a commercial pilot. After failing numerous practical tests between September 1988 and November 1991, including reexaminations of her Airline Transport Pilot ("ATP") status, she was notified that the Federal Aviation Administration ("FAA") intended to reexamine her instrument rating.
 
 
 3
 On March 6, 1992, during a reexamination check in an aircraft simulator, FAA Aviation Safety Inspector Ray Evans spotted three maneuvers in Mendenhall's performance that were below standard, prompting him to recommend that she "arrange ... for some additional training and schedule another reexamination check." Ten days later, Flight Standards District Office ("FSDO") Manager Al Toll wrote to Mendenhall, notifying her of the deficiencies in her performance and asking that she "voluntarily surrender" her flight instructor certificate and the instrument rating portion of her commercial pilot certificate.
 
 
 4
 On April 13, 1992, Mendenhall met with personnel at Long Beach FSDO and explained that, at considerable personal expense, she had obtained the additional training recommended by Inspector Evans. She also attempted to schedule a reexamination, requesting an ATP and type rating check in a CE-500 aircraft, administered by an examiner from another FSDO. Mendenhall was advised that the FAA would review her training records and notify her of its decision. By letter of April 21, 1992, the FAA declined Mendenhall's plea for a reexamination, citing safety concerns, and reiterated its request for a surrender of her instrument rating and flight instructor certificate.
 
 
 5
 On May 16, 1992, Mendenhall traveled to Riverside, California and passed a practical examination for an ATP certificate in a CE-500. FAA-designated examiner, Sam Stewart, issued her a temporary ATP certificate for the CE-500. Five days later, the Administrator of the FAA issued an emergency order of revocation against her previously issued flight instructor certificate and the instrument rating portion of her commercial pilot certificate. At that time, the Administrator was unaware of Mendenhall's recent success in obtaining ATP certification.[1]
 
 
 6
 On May 23, 1992, Mendenhall filed an appeal from the Administrator's order and surrendered her temporary ATP certificate. Her attorney contacted FAA counsel, informed him of Mendenhall's compliance with FAA recommendations, and requested that the matter be dismissed, which FAA counsel declined to do. On May 28, 1992, after receiving Mendenhall's notice of appeal as well as her surrendered ATP certificate,[2] FAA counsel filed the emergency order of revocation as a complaint before the National Transportation Safety Board ("Board").
 
 
 7
 Mendenhall's answer to the emergency order did not specifically mention the May 16 examination or its results. However, it did state that she had complied with the FAA's recommendations to receive additional training and to schedule a reexamination.
 
 
 8
 On June 5, 1992, the FAA's counsel telephoned Mendenhall's attorney and acknowledged that Mendenhall was qualified to hold an ATP certificate. However, instead of simply dismissing the complaint and returning Mendenhall's certificate, the FAA lawyer attempted to "plea bargain," notifying Mendenhall's attorney that the FAA would dismiss the complaint if Mendenhall would waive reimbursement for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 et seq. Mendenhall declined to do so because she had already incurred substantial expenses.
 
 
 9
 On June 8, 1992, FAA counsel moved to withdraw the emergency order which the Administrator did the same day. The administrative law judge ("ALJ") thereafter discontinued the proceeding.
 
 
 10
 Mendenhall served her EAJA application on July 7, 1992 which the Administrator timely answered. In due course, the ALJ denied the Application and the NTSB affirmed, holding that the Administrator was substantially justified in pursuing the case.
 
 II
 
 11
 The Court of Appeals reviews the NTSB order in accordance with the Administrative Procedure Act. 5 U.S.C. 701-706 (1994); Howard v. FAA, 17 F.3d 1213, 1215 (9th Cir.1994). The standard of review of the NTSB's determination that the FAA's position was substantially justified is abuse of discretion. Williams v. Bowen, 966 F.2d 1259, 1260 (9th Cir.1991). There is an abuse of discretion when an agency's decision is based on an erroneous conclusion of law or when the record contains no evidence on which it could have rationally based that decision. Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir.1990). A finding that an agency's position was substantially justified when the agency's position was based on violations of the Constitution, federal statute or the agency's own regulations, constitutes an abuse of discretion. Yang v. Shalala, 22 F.3d 213, 217-18 (9th Cir.1994).
 
 III
 
 12
 Mendenhall contends that the NTSB erred in affirming the ALJ's denial of petitioner's request for fees and costs because the Administrator of the FAA was not substantially justified in initiating and pursuing the enforcement action against her. Mendenhall argues that her compliance with all FAA recommendations estopped the agency from bringing the underlying revocation action. She also contends that the FAA's filing of a complaint with the NTSB alleging her lack of qualification, despite constructive and actual knowledge of her qualification, violated the agency's own policy.
 
 
 13
 A prevailing party is entitled to an award of attorneys' fees unless "the position of the agency was substantially justified or ... special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and expenses are sought." 5 U.S.C. § 504(a)(1) (1988).
 
 
 14
 The burden is on the agency to prove that its position was substantially justified. United States v. $12,248 U.S. Currency, 957 F.2d 1513 (9th Cir.1991). To meet this burden, the agency must prove that its position had a reasonable basis in both fact and law. Pierce v. Underwood, 487 U.S. 552, 556, 108 S.Ct. 2541, 2545, 101 L.Ed.2d 490 (1988); Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir.1987). The agency's "position" refers to the agency's decision to initiate the underlying action, as well as the agency's subsequent litigation positions. Rawlings v. Heckler, 725 F.2d 1192, 1195-96 (9th Cir.1984).
 
 
 15
 * Mendenhall asserts that the FAA was estopped from bringing the underlying action because of her compliance with all of its initial recommendations. She insists that after being notified of the three substandard maneuvers in her performance, she immediately followed the recommendations of FAA Inspector Evans. She obtained the additional training at considerable personal expense, and attempted to schedule a reexamination with the Long Beach FSDO. Despite being notified of her compliance with agency recommendations, the FAA denied her reexamination request and issued an order revoking her Flight Instructor certificate and instrument rating.
 
 
 16
 The Ninth Circuit has long recognized that estoppel is available as a defense against the government if the government's wrongful conduct threatens to work "a serious injustice, and the public's interest will not suffer undue damage by imposition of liability." Watkins v. U.S. Army, 875 F.2d 699 (9th Cir.1989).
 
 
 17
 In light of Mendenhall's concerted effort to comply with the FAA's recommendations, the agency's subsequent refusal to administer a reexamination might appear to "work a serious injustice." However, the FAA had reasonable cause for concern based on Mendenhall's repeated failures on practical examinations. Thus, although the FAA could have been more straightforward about its concerns and requirements prior to Mendenhall's expending funds for additional training, its conduct did not work "a serious injustice." Mendenhall's compliance with recommendations alone did not estop the agency from initiating certificate action against her.
 
 B
 
 18
 Mendenhall asserts that by issuing her an ATP Certificate on May 16, 1992, the FAA had constructive notice of her qualifications. Administrator v. Rothbart and Voorhees, NTSB Order No. EA-3052 (1990) (holding FAA had constructive notice when an office within the FAA had actual notice). In addition, Mendenhall asserts that FAA's counsel was provided actual notice of her qualification because upon receiving the FAA's emergency order of revocation on May 23, 1992, she immediately surrendered to the agency's counsel her pilot certificate plainly captioned, "AIRLINE TRANSPORT PILOT" issued only one week earlier and clearly dated May 16, 1992.
 
 
 19
 Despite physical possession of the surrendered certificate and having "noticed that it was an ATP certificate," FAA's counsel nevertheless filed the emergency order of revocation as a complaint before the NTSB. In doing so, the agency violated its own policy as well as Mendenhall's rights under California law.
 
 
 20
 FAA Order 2150.3A, Compliance and Enforcement Program, establishes policies and procedural rules to be followed in enforcement actions. These policies and procedural rules confer important benefits upon individuals that are the subject of enforcement actions. FAA employees are not free to disregard these policies and procedural rules. See Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974).
 
 
 21
 Paragraph 801 of FAA Order 2150.3A provides, in pertinent part:
 
 
 22
 801. PROCEDURES .... e. If the certificate holder, within a reasonable time, fails to submit to reexamination or to comply with a request for reinspection, the following procedures should be followed:.... (7) If the certificate holder satisfactorily establishes qualifications to continue to hold and use the certificate, the field office ... shall issue a letter advising the certificate holder of that finding, with a copy to the legal counsel who issued the order. Legal counsel shall take appropriate steps to terminate the order, release the certificate stop order, and update the EIS.
 
 
 23
 (Emphasis added).
 
 
 24
 The FAA asserts that this provision is inapplicable to the present case since Mendenhall failed to inform the Riverside FSDO that she had failed earlier examinations at the Long Beach FSDO and that she had been advised that certificate action would ensue. This information would have triggered the FAA's responsibility under Paragraph 801(e)(7). Although Mendenhall's failure to inform the Riverside FSDO of her testing history certainly delayed the FAA's response, the surrendered ATP certificate (after a call to Riverside FSDO examiner Stewart for verification) is the functional equivalent of a letter from the field office. Upon receipt of the certificate, FAA counsel should have immediately realized that Mendenhall had "satisfactorily establishe[d] [her] qualifications." Thus, FAA counsel's failure to take appropriate steps to terminate the order, release the certificate stop order, and update the Enforcement Information System ("EIS") shortly after receiving the ATP certificate, constituted a violation of FAA policy.
 
 
 25
 The agency lawyer's duty to terminate the order of revocation immediately upon receipt of notice is also compelled by Scott v. Administrator, NTSB Order No. EA-4274 (1994). In Scott, the NTSB reversed and remanded the administrative law judge's denial of EAJA application, stating:
 
 
 26
 [A]s a matter of policy we look with considerable disfavor on the Administrator's argument that, for the purposes of EAJA, a respondent is required formally to assert a defense before the Administrator is required to investigate it, even though it is known to him. This approach would elevate form over substance by allowing the Administrator to ignore exonerating information. Under EAJA, the Administrator has a duty to discontinue his investigation or prosecution at any time he knows or should know that his case is not reasonable in fact or law, or be liable for EAJA fees for any further expenses applicant incurs. The Administrator was required to analyze, as more information became available to him, whether continued investigation and prosecution was reasonable. We categorically reject the suggestion that the Administrator had no such duty.
 
 
 27
 Id. at 5-6. (Emphasis original). Mendenhall's attainment of an ATP certificate was not an "affirmative defense" that she was required to plead. FAA counsel should have terminated the claim the moment he received Mendenhall's surrendered certificate. In light of the fact that Mendenhall had met with the Long Beach FSDO pleading for a reexamination, the agency's attorney should have realized that the ATP certificate indicated that she had passed the examination elsewhere. Even a glance at the reexamination date should have clarified the situation. The FAA's statement that much of its investigation time was spent determining whether or not Mendenhall had notified anyone of her test results indicates that the certificate was retained far longer than was required. Contrary to the FAA's assertions, ten days without a license is not "a reasonable period of time," when one's livelihood depends upon it.
 
 
 28
 By filing the NTSB complaint after receiving actual notice of Mendenhall's qualification, the FAA violated its own policy. Thus, the NTSB abused its discretion by finding that the FAA's position was reasonably based in law. We conclude that the agency's position was not substantially justified after May 23, 1992, the date the FAA attorney received the newly issued temporary ATP certificate.
 
 C
 
 29
 Mendenhall requests attorneys' fees at a reasonable market rate. Such a rate is appropriate where there is a showing of bad faith. See 28 U.S.C. § 2412(b); Brown v. Sullivan, 916 F.2d 492, 495-96 (9th Cir.1990). In the proceeding before it, the NTSB granted the FAA's motion to strike all references to the "plea bargain" discussion initiated by the FAA's attorney on June 5, 1992. Characterizing the conversations as "settlement discussions," the Board struck the references on the basis that "they are contrary to public policy." Mendenhall v. Administrator, NTSB Order No. 4121, p. 2. n. 1 (1994). The basis for the Board's exclusion of "settlement discussions" is Rule 408 of the Federal Rules of Evidence, which excludes evidence of compromise or statements made in compromise negotiations. See Administrator v. Honan, 4 NTSB 418, 420 (1982). However, the rule does permit the inclusion of such evidence when it is offered for another purpose such as proving bias or prejudice, or "for purposes of determining a Rule 11 violation." Eisenberg v. University of New Mexico, 936 F.2d 1131, 1134 (10th Cir.1991). Although Federal Rule of Civil Procedure 11 does not apply to this case, Mendenhall is persuasive in arguing that "it is for the purpose of demonstrating the breach of a similar standard that the [settlement] discussions were offered here."
 
 
 30
 Mendenhall correctly argues that the Board erred in refusing to consider these discussions between the attorneys. The agency's contention that these discussions were settlement discussions which should be struck from the record on the basis of public policy is without merit. As agency counsel conceded at oral argument, there was nothing to settle at the time these conversations occurred. Thus, the Board erred in refusing to consider the discussions in which the agency's counsel attempted to persuade Mendenhall to waive her EAJA claim.
 
 
 31
 The moment the FAA acknowledged that Mendenhall was qualified to hold an ATP Certificate, the agency was no longer justified in pursuing its action alleging a lack of qualification. The agency's continuation of an action it knew to be baseless, in an effort to coerce the waiver of EAJA fees, is a prime example of "bad faith." See Brown, 916 F.2d at 495-96.
 
 IV
 
 32
 The NTSB abused its discretion in finding that the FAA's position was substantially justified. The FAA violated its own regulations from the time it issued the complaint on May 24, 1992 until dismissal, Yang, 22 F.3d at 217-18, and acted in bad faith, Brown, 916 F.2d at 495-96. Accordingly, we reverse the order of the NTSB and remand with instructions to reimburse Mendenhall for attorneys' fees at a reasonable market rate for the period commencing May 23, 1992.
 
 
 33
 REVERSED and REMANDED.
 
 
 
 [1]
 The ATP certificate is the highest pilot certificate issued by the FAA. (See 14 C.F.R. Part 61 Subpart F). By demonstrating her qualification to hold an ATP certificate, Mendenhall proved that she was qualified to hold her instrument rating and flight instructor certificate
 
 
 [2]
 This certificate clearly states the date of issuance as "5/16/92."